IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMY SIMPSON,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )          1:20CV1100
                                      )
ROCKINGHAM COUNTY BOARD               )
OF ELECTIONS, et al.,                 )
                                      )
            Defendants.               )

<u>RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>

This matter is before the Court on a Motion to Dismiss [Doc. #16] brought by
Defendants Rockingham County Board of Elections ("RCBOE"), Rockingham County,
Bonnie Purgason, both individually and in her official capacity as a board member of RCBOE,
and Toni Reece, both individually and in her official capacity as a board member of RCBOE
(collectively "Defendants"). As set out further below, it is recommended that the Motion to
Dismiss be granted as to the claims against Rockingham County, since the RCBOE is the
proper defendant; granted as to the claims against Defendants Purgason and Reece
individually for wrongful discharge since RCBOE was the employer; and granted as to the
claims against Defendants Purgason and Reece in their official capacities since those claims
are duplicative of the claims against RCBOE, but that the Motion to Dismiss be denied in all
other respects without prejudice to further consideration of the issues after discovery and
presentation on a more complete record.

I.    FACTS, CLAIMS, AND PROCEDURAL HISTORY

For purposes of this Order on a Motion to Dismiss, the Court must take as true the facts as alleged by Plaintiff in the Complaint [Doc. #1].  Here, Plaintiff Amy Simpson alleges that she was named Senior Deputy Director of RCBOE on August 20, 2018.  (Compl. ¶¶11-12.)  Plaintiff alleges that in that role she was a "dual employee of both the RCBOE and the County" and that her job description and title were determined by RCBOE, while her salary, retirement, and other benefits were set by Rockingham County.  (Compl. ¶ 9.)  Plaintiff alleges that in March 2020, the RCBOE County Director stopped coming into the office and effectively retired, and Plaintiff assumed the duties of the Director.  For three months, from mid-March 2020 until June 15, 2020, Plaintiff was the only RCBOE employee.  Plaintiff alleges that RCBOE hired a second full-time employee on June 15, 2020, who Plaintiff trained and supervised.  Plaintiff alleges that she received no increase in pay or benefits for taking on these extra responsibilities.  (Compl. ¶ 12.)

According to the Complaint, in September 2020, Plaintiff had a private conversation with her doctor in which she asked "[i]f a friend could put up a sign outside [the doctor's] office like [he] had previously allowed [Plaintiff] to do."  In reply, the doctor said, "Sure." (Compl. ¶ 14.)  Plaintiff alleges that shortly thereafter, Defendants Purgason and Reece visited Plaintiff's doctor to ask about that conversation.  A few days later, on September 29, 2020, RCBOE held a board meeting ostensibly for the purpose of counting absentee ballots.  At that meeting, without prior notice, RCBOE went into Executive Session for a closed-door discussion with the County Attorney.  Plaintiff was called into that Executive Session and questioned about the conversation with her doctor.  She was specifically asked whether she

2

thought her conversation with her doctor violated N.C. Gen. Stat. § 163-39, which prescribes limitations on political activity for members and employees of the State Board of Elections and each County Board of Elections. Plaintiff responded that she did not believe her conversation violated the statute. RCBOE then returned to open session, where Defendant Purgason moved to terminate Plaintiff's employment. Defendant Reece seconded the motion, and RCBOE voted to terminate Plaintiff's employment by a vote of 4-1. (Compl. ¶ 13.) At the time of her termination, Plaintiff was ten months shy of eligibility for full County retirement. (Compl. ¶ 11.) Plaintiff alleges that her "conversation with her doctor qualified as speech protected by the state and federal Constitutions in that her speech related to a matter of public concern (the election process), was spoken in a private discussion not associated with her workplace, and was the motivating or 'but for' factor causing her discharge from employment." (Compl. ¶ 23.)

Based on the above facts, Plaintiff brings four claims for relief. First, under 42 U.S.C. § 1983, Plaintiff alleges that in terminating her based on a private conversation related to a matter of public concern, Defendants violated her First Amendment right to freedom of speech. Second, Plaintiff alleges that Defendants' actions violated her right to free speech guaranteed by Article I, §§ 1 and 14 of the North Carolina State Constitution. Third, Plaintiff alleges that it is the public policy of the State of North Carolina that local government employees be protected from retaliation for exercising their rights to free speech, and that Defendants' action of terminating her employment violated that policy. Fourth, Plaintiff alleges that Defendants RCBOE and Rockingham County were unjustly enriched when Plaintiff assumed the duties and responsibilities of the County Director for several months in

3

2020 without an accompanying increase in salary or benefits.[1] As relief, Plaintiff requests a declaration that Defendants violated her rights under both state and federal law, an injunction mandating that she be reinstated to her position with RCBOE, $125,000 in compensatory damages, punitive damages against Defendants Purgason and Reece, and any other relief the Court deems appropriate.

Defendants now move to dismiss all claims. In the Motion to Dismiss, Defendants first argue that Defendant Rockingham County is not a proper party to this suit, because Plaintiff was employed (and terminated) by the Rockingham County Board of Elections, a distinct legal entity. Second, all Defendants contend that Plaintiff has failed to state a claim for relief under the First Amendment and 42 U.S.C. § 1983, because RCBOE rightly considered Plaintiff's conversation with her doctor to be a solicitation of support for a favored political candidate or cause that would impede Plaintiff's duties, interfere with the operation of RCBOE, conflict with Plaintiff's responsibilities as an RCBOE employee, and undermine the mission of the RCBOE. Third and relatedly, Defendants Purgason and Reece contend that even if their actions violated Plaintiff's First Amendment rights, they are entitled to qualified immunity on that claim. Fourth, Defendants argue that Plaintiff may not bring a claim for relief directly under the North Carolina Constitution, because Plaintiff has failed to establish that she has no other adequate state law remedy. Fifth, Defendants argue that Plaintiff has failed to state a claim for wrongful discharge in violation of public policy, because

---

[1] Plaintiff also raises the possibility that Defendants used Plaintiff's expression of speech as a pretext to terminate her. (Compl. ¶ 16.) Based on the facts set out in the Complaint, Plaintiff appears to view her termination as motivated, at least in part, by Defendants' desire to cut off her access to retirement benefits before they fully vested. However, Plaintiff has not provided further detail to support an allegation of pretext and has not brought a claim rooted in the alleged pretextual termination. Therefore, the Court will not further consider the matter of pretext, and instead focuses on the specific claims asserted in the Complaint.

4

Plaintiff has not established a violation of her First Amendment free speech rights as asserted with respect to the § 1983 claim, and has not otherwise shown that her termination was motivated by an unlawful reason or purpose that is against public policy. Sixth, Defendants contend that Plaintiff has failed to state a claim for unjust enrichment. Seventh, Defendants Purgason and Reece argue that they are entitled to public official immunity on the state law claims because Plaintiff has not shown that they acted willfully and wantonly, and thus that all state law claims brought against them in their individual capacities should be dismissed. Eighth, Defendants Purgason and Reece argue that claims against them in their official capacities as RCBOE board members should be dismissed because those claims are duplicative of the same claims asserted directly against RCBOE. Ninth, Defendants contend that Plaintiff has failed to allege aggravated conduct that could plausibly entitle her to an award of punitive damages. Tenth, Defendants claim that they are entitled to governmental immunity as to Plaintiff's state law claims for wrongful termination and unjust enrichment.

## II.    LEGAL STANDARD

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the

5

defendant is liable for the misconduct alleged. <u>Id.</u> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." <u>Twombly</u>, 500 U.S. at 555, 570; <u>see</u> <u>Iqbal</u>, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. <u>Iqbal</u>, 556 U.S. at 678. Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

III.    <u>DISCUSSION</u>

The Court first considers the Motion to Dismiss as to Rockingham County as an improper party. The Court then considers each of Plaintiff's four claims for relief in turn. Finally, the Court considers the additional contentions as to Defendants Purgason and Reece in their individual and official capacities, and then considers the remaining matters raised in the Motion to Dismiss.

A.    <u>Motion to Dismiss as to Rockingham County as Improper Party</u>

Defendant Rockingham County first argues that all claims against it should be dismissed because it is not a proper party to this suit. Specifically, the County contends that under North Carolina law, county boards of elections "have the power to sue and be sued," and are "distinct legal entities from the counties in which they are located." <u>Graham Cnty. Bd. of Elections v. Graham Cnty. Bd. of Comm'rs</u>, 212 N.C. App. 313, 322, 712 S.E.2d 372,

378 (2011). Defendants therefore contend that the proper Defendant is the RCBOE, not the County. Rockingham County analogizes its relationship with RCBOE to its relationship with the county sheriff's office or the office of the county register of deeds. In this regard, North Carolina courts have held that deputy sheriffs and employees of the register of deeds office are not county employees. <u>Young v. Bailey</u>, 368 N.C. 665, 669-70, 781 S.E.2d 277, 280 (2016) (holding that "[i]n light of the distinct demarcation between county government and the office of the sheriff, we conclude that a sheriff's office is not a program or department of a county and agree with the consistent holdings of the Court of Appeals that a deputy sheriff or employee of a sheriff's office is not a county employee"); <u>Sims-Campbell v. Welch</u>, 239 N.C. App. 503, 507, 769 S.E.2d 643, 648 (2015) (finding that "[a]n employer-employee relationship simply cannot exist between a county and employees of the register of deeds where the county has no authority to hire, fire, supervise, or control those employees"). Rockingham County argues that because RCBOE is a distinct legal entity that has the authority to appoint and remove its own employees, N.C. Gen. Stat. § 163-33(10), and fix the compensation of its employees, N.C. Gen. Stat. § 163-32, Plaintiff is an employee of RCBOE alone, and any wrongful action she suffered related to her employment is an issue to address with RCBOE, not Rockingham County.

The division of authority among state and local government entities is a question of state law, and the Court follows the direction of North Carolina state courts. The North Carolina Court of Appeals has noted that "the county boards of elections and county commissioners enjoy . . . a reciprocal, interwoven relationship." <u>Graham Cnty.</u>, 212 N.C. App.

at 319, 712 S.E.2d at 377.[2]  In <u>Graham County</u>, the North Carolina Court of Appeals examined this interwoven relationship at length, and observed that:

> The relationship established between the State Board of Elections, county boards of elections, and counties suggests county boards of elections are not integrated subcomponents of the counties. The members of the county boards of election are appointed and can be removed by the State Board of Elections. N.C. Gen.Stat. § 163–30 (addressing appointment); N.C. Gen.Stat. § 163–22(c) (addressing removal); <u>see also</u> supra Section II.A. And the county boards of elections are required to comply with directives from the State Board of Elections. N.C. Gen.Stat. § 163–33. It is true, as the Board of Commissioners points out, that the county boards of elections are dependent on the counties for their funding. Supra Section II.A (discussing various statutes related to funding and compensation). However, we believe the State Board of Elections' dominion over the local boards' conduct weighs more heavily than their reliance on the counties for funding. Finally, we note that our Supreme Court and this Court have heard numerous cases in which a county board of elections has been a party to the litigation. . . .
>
> <u>We hold that county boards of elections have the power to sue and be sued and that they are distinct legal entities from the counties in which they are located.</u> We also hold the GCBOE has standing.
> . . . .
> At first glance, section 153A–92, which states that boards of county commissioners shall "fix or approve the schedule of pay" for all county employees, indicates the Board of Commissioners has the discretion to determine the number and pay of all GCBOE employees. N.C. Gen.Stat. § 153A–92. Although no statute states that county boards of elections employees other than the director of elections are "county employees," if the director of elections is a county employee, it follows that all other county board of elections employees are county employees as well. <u>See</u> N.C. Gen.Stat. § 163–35(c) (describing the director of elections as a "county employee"). However, section 163–32 states that the county boards of elections shall pay their employees "such compensation as it shall fix within budget appropriations." N.C. Gen. Stat. § 163–32. And subsection 163–33(10) gives county boards of elections the power to "appoint and remove the board's clerk, assistant clerks, and other employees." N.C. Gen.Stat. § 163–33(10). These statutes all address the same subject matter, but sections 163–32 and –33 do so more specifically;

---

[2] "Because North Carolina currently has no mechanism for [the Court] to certify questions of state law to its Supreme Court" this Court "must follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide it differently." <u>Town of Nags Head v. Toloczko</u>, 728 F.3d 391, 398 (4th Cir. 2013) (citations and quotations removed).

8

therefore, they control. See Fowler v. Valencourt, 334 N.C. 345, 349, 435 S.E.2d 530, 532 (1993) ("[W]here two statutes deal with the same subject matter, the more specific statute will prevail over the more general one.").

We conclude that, so long as a county board of elections remains within the budget allocated by the local board of county commissioners, <u>the county board of elections has the sole authority to hire and fire elections employees</u>.

Graham Cnty., 212 N.C. App. at 321-23, 712 S.E.2d at 378-79 (emphasis added). Thus, as a general matter, "county board of elections employees are county employees." Graham Cnty., 212 N.C. App. at 323, 712 S.E.2d at 379; see also Johnson v. Forsyth Cnty., 227 N.C. App. 276, 280, 743 S.E.2d 227, 229 (2013) ("County Board of Elections employees are county employees, paid by the county.") However, the more specific statutes applicable to county boards of election provide that the "board of elections shall pay its . . . employees such compensation as it shall fix within budget appropriations," N.C. Gen. Stat. § 163-32, and the "county boards of elections within their respective jurisdictions shall exercise all powers granted to such boards in this Chapter, and they shall perform all the duties imposed upon them by law, which shall include the following . . . [t]o appoint and remove the board's clerk, assistant clerks, and other employees," N.C. Gen. Stat. § 163-33(10). Given the specific statutory provisions applicable to county boards of elections, which control over the more general provisions applicable to counties generally, the North Carolina Court of Appeals concluded in Graham County that "so long as a county board of elections remains within the budget allocated by the local board of county commissioners, the county board of elections

9

has the sole authority to hire and fire elections employees." Graham Cnty., 212 N.C. App. at 323, 712 S.E.2d at 379.

Applying the guidance of Graham County here, under state law RCBOE had the "sole authority" to terminate Plaintiff's employment. While Plaintiff may have been an employee of Rockingham County to the extent that her paychecks were disbursed by the County, Rockingham County's duty to pay her salary was "purely ministerial" so long as RCBOE chose to retain her and remained within its broad budget allocation. Graham Cnty., 212 N.C. App. at 323-24, 712 S.E.2d at 379-80. Plaintiff contends that this case is unlike the sheriff's deputies or the employees of the register of deeds in the cases cited by Defendants because the RCBOE did not have the "exclusive right" to terminate her. (Pl. Br. at 4.) However, the North Carolina Court of Appeals has explicitly held otherwise, specifically holding that the county board of elections has the sole authority to hire and fire elections employees, as set out above.

In considering the allegations in the Complaint, the Court further notes that the Complaint itself alleges that Plaintiff was terminated by the RCBOE, and does not allege any action by the County. Plaintiff contends that "in the past the County has in fact applied its employment policies to Plaintiff in her role as RCBOE Senior Deputy Director." (Compl. ¶ 10.) However, she does not allege that her termination was directed by the County or related to any perceived violation of County policy. Rather, Plaintiff alleges that she was terminated by RCBOE because RCBOE, a separate entity, believed that she engaged in inappropriate

10

political conversation and violated a state statute specifically directed at the conduct of board of elections employees.

In the briefing responding to the Motion to Dismiss, Plaintiff contends that the County was involved in the First Amendment violation because the County Attorney was part of the closed-door RCBOE meeting that occurred just prior to the vote to fire her. Plaintiff argues that "42 U.S.C. § 1983 contains no exception for the direct conduct attributable to the County through its agents" and that the County "chose to participate directly in her termination through its agent, the County attorney." (Pl. Br. at 5-6.) However, an entity "cannot be held liable under § 1983 on a *respondeat superior* theory." Hunter v. Town of Mocksville, 897 F.3d 538, 553-54 (4th Cir. 2018). Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-95 (1978), a local government entity may only be sued under 42 U.S.C. § 1983 when the claimed constitutional injury results from the government's policy or custom. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Here, Plaintiff has not asserted a claim against the County Attorney, nor has she alleged that the County Attorney had final policymaking authority for the County regarding her employment. See Hunter, 897 F.3d at 553-61. Because Rockingham County had no authority to terminate Plaintiff's employment, and because Plaintiff has not asserted a claim against the County Attorney and has not set out a separate basis for a claim against the County, the Court recommends that Plaintiff's claims

11

against Rockingham County under § 1983 and for wrongful discharge be dismissed as presently pled.[3]

As to her unjust enrichment claim, Plaintiff alleges that Defendants RCBOE and Rockingham County voluntarily accepted her services as the County Director without paying her a commensurate salary, refusing her services, or hiring a new County Director to perform the work. (Compl. ¶¶ 40-44.) However, under the analysis set out by the North Carolina Court of Appeals in <u>Graham County</u>, Rockingham County had no authority to refuse Plaintiff's services or raise her salary. Under state law, as articulated by the North Carolina Court of Appeals, Rockingham County is responsible for appropriating money to broadly fund RCBOE. <u>Graham Cnty.</u>, 212 N.C. App. at 318-23, 712 S.E.2d at 376-79. Within the broad allocation set by the County, RCBOE has the discretion to pay its employees "such compensation as it shall fix within budget appropriations." N.C. Gen. Stat. § 163-32. So long as RCBOE remains within its budget, Rockingham County has "no authority to determine the number of county board of elections employees." <u>Graham Cnty.</u>, 212 N.C. App. at 324, 712 S.E.2d at 380. Therefore, RCBOE, not Rockingham County, was the only party with a meaningful opportunity to voluntarily accept Plaintiff's services, and was the only party with the authority to set her salary or to hire a new County Director. As such, the Court

---

[3] The Court notes that it may be that the County bears ultimate financial responsibility for any judgment as to the RCBOE, given the "interwoven relationship" and structure established by state statute, and the Court does not reach that issue here. The County is clearly on notice regarding this suit and can act to protect its interest as it deems appropriate. In addition, if later discovery or developments in the case create a basis for claims against the County, the Court can consider any proposed amendments by Plaintiff in that regard.

12

recommends that Plaintiff's claim for unjust enrichment against Rockingham County be dismissed.

B.    <u>Motion to Dismiss and Analysis of Claims</u>

Defendants next move to dismiss all of Plaintiff's claims for failure to state a claim under Rule 12(b)(6).  The Court considers Defendants' contentions as to each of Plaintiff's claims in turn.

1.    <u>First Amendment and 42 U.S.C. § 1983</u>

Under 42 U.S.C. § 1983, "[e]very person" who acts pursuant to a "statute, ordinance, regulation, custom, or usage" to deprive a person of their Constitutional rights, "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Here, Plaintiff alleges that Defendants violated her First Amendment right to freedom of speech when, acting under their authority as the RCBOE or as the board members of the RCBOE, they terminated her in retaliation for engaging in a private conversation with her doctor about the upcoming election.  The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech," and the Fourteenth Amendment extends that prohibition on government interference to state and local governments.  See <u>Bland v. Roberts</u>, 730 F.3d 368, 373 (4th Cir. 2013).  The First Amendment protects not only freedom of speech, but "the right to be free from retaliation by a public official for the exercise of that right." <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676, 685 (4th Cir. 2000).  However, Courts have long held that the rights of government employees to speak freely on subjects that may impact their work are more limited than the speech rights of the general public.  See <u>Connick v. Myers</u>, 461 U.S. 138 (1983); <u>Pickering v. Board of Education</u>,

13

391 U.S. 563 (1968). "The government may impose certain restraints on its employees' speech and take action against them that would be unconstitutional if applied to the general public." Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011).[4]

The Fourth Circuit addressed the applicable standard for First Amendment retaliation claims brought by public employees in Bland v. Roberts, noting that:

> [I]n order for a public employee to prove that an adverse employment action violated his First Amendment rights to freedom of speech, he must establish (1) that he "was speaking as a citizen upon a matter of public concern" rather than "as an employee about a matter of personal interest"; (2) that "the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public"; and (3) that "the employee's speech was a substantial factor in the employee's termination decision." McVey v. Stacy, 157 F.3d 271, 277–78 (4th Cir. 1998). In conducting the balancing test in the second prong, we must consider the context in which the speech was made, including the employee's role and the extent to which the speech impairs the efficiency of the workplace. See Rankin v. McPherson, 483 U.S. 378, 388–91, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987).

Bland, 739 F.3d at 373-74. "While the inquiry into the protected status of speech is one of law, not fact, such status must be determined by the content, form, and context of a given statement, as revealed by the whole record." Ridpath v. Bd. of Governors Marshall Univ., 447

---

[4] The Fourth Circuit has noted that cases involving the speech rights of public employees often blend with jurisprudence governing the termination of public employees for their affiliation with or support for a particular political party or candidate. See Bland, 730 F.3d at 374-75 (discussing Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980)). Here, unlike in Bland, Elrod, or Branti, Plaintiff does not allege that she was terminated due to support for a particular candidate or party that was disfavored by Defendants. Rather, she alleges that Defendants terminated her for making a statement related to the election, regardless of party or other affiliation.

F.3d 292, 316-17 (4th Cir. 2006) (quoting <u>Connick</u>, 461 U.S. at 147-48 (internal quotation omitted)).

As to the first prong of the <u>Bland</u> test, Plaintiff must establish that she "was speaking as a citizen upon a matter of public concern" rather than "as an employee about a matter of personal interest." <u>Bland</u>, 739 F.3d at 373-74.[5] Here, the Complaint alleges that Plaintiff was speaking as a private citizen about an upcoming election, a matter of public concern. <u>Ridpath</u>, 447 F.3d at 316-17 (4th Cir. 2006) ("An employee's speech involves a matter of public concern if it addresses an issue of social, political, or other interest to a community." (citations and quotations omitted)). In the present Motion to Dismiss, Defendants do not contend that Plaintiff has failed to allege facts to satisfy this first prong of the <u>Bland</u> test.

Defendants also do not contend that Plaintiff failed to sufficiently allege the third prong of the <u>Bland</u> test. The third prong of the <u>Bland</u> test requires Plaintiff to establish that "the employee's speech was a substantial factor in the employee's termination decision." <u>Bland</u>, 739 F.3d at 373-74. Here, Plaintiff alleges that her speech was a substantial factor in her termination, contending that Defendants specifically asked her about the conversation with her doctor, and whether she thought that conversation violated state law, before terminating her employment.

The only issue raised by the Defendants in the Motion to Dismiss is whether Plaintiff can satisfy the second prong of the <u>Bland</u> test. The second prong of the <u>Bland</u> test focuses

---

[5] "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 421 (2006). Similarly, if the employee was not speaking on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." <u>Id.</u> at 418.

15

on the question of "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Garcetti, 547 U.S. at 418. In this regard, the Supreme Court has explained that

> When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom. Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services. Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions.
>
> At the same time, the Court has recognized that a citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.

Id. at 418-19 (internal citations omitted). The Fourth Circuit has set out a list of factors for courts to consider in conducting the balancing of interests required by the second prong:

> Factors relevant to this inquiry include whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the [agency]; (6) undermined the mission of the [agency]; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the [agency]; and (9) abused the authority and public accountability that the employee's role entailed. Accordingly, "a public employee who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee."

Bland, 730 F.3d at 374 (quoting Ridpath, 447 F.3d at 317, and McVey, 157 F.3d at 278). In balancing these factors, "the government bears the burden of justifying the discharge on

legitimate grounds. . . . However, the government need not prove that the employee's speech actually disrupted efficiency; rather, its burden is to show that an adverse effect was reasonably to be apprehended." Lawson v. Union Cnty. Clerk of Court, 828 F.3d 239, 252 (4th Cir. 2016) (citations and quotations omitted). Defendants argue that the above factors clearly favor dismissal, because a Senior Deputy Director of an elections board soliciting support for a political candidate "impedes the performance of Plaintiff's duties, interferes with the operations of the agency, conflicts with the responsibilities of the employee within the agency, and undermines the mission of the agency." (Defs. Br. at 11.) Plaintiff responds that Defendants' argument assumes facts that are not in the Complaint and not appropriate for this stage of the case, including whether her comments were in fact a solicitation of support for a political candidate or cause, and whether and to what extent her actions interfered with RCBOE operations.

The Fourth Circuit has cautioned against wading into the fact-bound determinations involved in balancing the above set of factors on a Rule 12(b)(6) motion. In McVey, 157 F.3d at 271, the Fourth Circuit considered a claim of qualified immunity raised by members of the Virginia Highlands Airport Commission after the airport manager alleged that she was fired in retaliation for writing a letter to the local newspaper explaining her concerns with the Commission's response to a Virginia Freedom of Information Act request. The Fourth Circuit affirmed the denial of the motion to dismiss where "the complaint [did] not resolve on its face the extent to which the . . . balancing factors were satisfied or the extent to which McVey's role was a confidential, policymaking, or public contact role." Id. at 278-79. The Fourth Circuit noted that the balancing was "still open for determination" and affirmed the decision

of the district court to "defer deciding on the qualified immunity issue until the record is better developed on the immunity issues." Id. at 279. Similarly, in Ridpath v. Board of Governors of Marshall University, 447 F.3d at 318, the Fourth Circuit held that fact-intensive balancing of the factors was properly assessed in Rule 56 summary judgment proceedings, not at the Rule 12(b)(6) stage.

> Once a factual record is developed through discovery, the evidence could support the inference that Ridpath's workplace was impaired as a result of his comments and that he simply had to be terminated from his adjunct teaching position. Such a question, however, is not to be assessed under Rule 12(b)(6) but in Rule 56 summary judgment proceedings. See McVey, 157 F.3d at 278–79 (affirming district court's decision to defer deciding qualified immunity until "record is better developed" in part because complaint did not "resolve on its face" second prong of McVey test). At the Rule 12(b)(6) stage, Ridpath's allegations warrant the inference that his free speech interests outweigh the detrimental effect, if any, his comments may have had on the efficiency of his workplace. Indeed, read in the proper light, the Amended Complaint alleges that he was relieved of his adjunct teaching position for protected statements that had no impact on his workplace whatsoever.

Ridpath, 447 F.3d at 318; see also Rankin v. McPherson, 483 U.S. 378, 388 (1987) ("In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose.").

Here, Plaintiff is an employee of RCBOE, an entity tasked with administering elections in Rockingham County. Two core functions of RCBOE, and two important government interests, are ensuring that elections are administered in a fair and equitable manner, and ensuring that the public views election administration as fair and equitable. If in fact Plaintiff engaged in a solicitation of support for a political candidate or cause as Defendants contend, Defendants may well be able to establish that such conduct would shake public confidence in

her ability to carry out the core function of RCBOE to fairly and equitably administer elections. However, Plaintiff disputes Defendants' characterization of her conduct, and Defendants' characterization of Plaintiff's conduct goes beyond the facts alleged in the Complaint. With respect to the various factors to be considered, at this stage the Court considers only the facts in the Complaint, not Defendants' additional contentions and characterizations. Considering only the allegations in the Complaint, the Court cannot undertake a full balancing of the relevant factors with respect to whether Plaintiff's action impaired the maintenance of discipline, impaired harmony among coworkers, damaged close relationships, impeded the performance of her duties, interfered with the operation of the RCBOE, undermined the mission of the RCBOE, was communicated to the public, conflicted with her responsibilities within the RCBOE, or abused the authority and public accountability of her role. Furthermore, as in McVey, the Complaint does not address whether Plaintiff's role at RCBOE is equivalent to an agency head, or is otherwise a "confidential, policymaking, or public contact role." McVey, 157 F.3d at 278. Therefore, even recognizing the significant governmental interest at stake, the Court finds that further factual development is required to determine whether Plaintiff's termination was an unconstitutional restriction on her right to free speech.[6]

The Court notes that Defendants Purgason and Reece also contend that they are entitled to qualified immunity on this claim because "Plaintiff has alleged no conduct on the

---

[6] In conjunction with her claims, Plaintiff contends that her conversation with her doctor was protected by N.C. Gen. Stat. § 163-39. The statute provides, in relevant part, that no board of elections employee shall:
    (1) Make written or oral statements intended for general distribution or dissemination to the public at large supporting or opposing the nomination or election of one or more clearly identified candidates for public office.
    (2) Make written or oral statements intended for general distribution or dissemination to the public at large supporting or opposing the passage of one or more clearly identified referendum proposals.
    (3) Solicit contributions for a candidate, political committee, or referendum committee.

part of the Defendants which deprived Plaintiff of a constitutional right that was clearly established at the time of their actions." (Defs. Br. at 12.) This contention appears to be based primarily on the same argument that Plaintiff's First Amendment rights were not violated. See Hunter v. Town of Mocksville, 789 F.3d 389, 396 (4th Cir. 2015) ("To successfully avail themselves of qualified immunity, Defendants must show either that no constitutional violation occurred or that the right violated was not clearly established at the time it was violated. Defendants argue primarily that no violation occurred."). In McVey, discussed above, the Fourth Circuit considered a qualified immunity defense and began with the principle that "particularly in First Amendment cases, where a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected." McVey, 157 F.3d at 277 (quotation marks removed). However, the Fourth Circuit ultimately determined that a grant of qualified immunity was premature at the Rule 12(b)(6) stage when the allegations in the Complaint did not resolve the extent to which the balancing factors were satisfied or the extent to which the plaintiff's role was a confidential, policymaking, or public contact role. Id. at 277-79; see also Ridpath, 447 F.3d at 320-21 (similarly denying a motion to dismiss on a qualified immunity

_____

N.C. Gen. Stat. § 163-39. That statute expressly exempts "[i]ndividual expressions of opinion, support, or opposition not intended for general public distribution" from its set of prohibitions. Id. In the briefing, Defendants contend that Plaintiff's conversation was a prohibited solicitation, while Plaintiff contends that her conversation was instead a permissible individual expression. At this stage, the Parties do not address whether the state statute provides a ground for relief independent of either the Federal or State Constitutions, nor do they address whether its permissive scope should be interpreted as coextensive with the First Amendment or with Article I, Section 14 of the North Carolina Constitution. Furthermore, Plaintiff has not brought a facial challenge to the statute, but rather argues that her conduct falls within its permissive scope. Given the lack of development of these issues, and the unresolved factual disputes discussed in more detail above, the Court need not resolve these issues at this time.

20

defense at the Rule 12(b)(6) stage). The same analysis would apply here, and the motion to dismiss based on qualified immunity should be denied without prejudice to further consideration after discovery. As such, Defendants' motion to dismiss Plaintiff's First Claim for Relief should be denied.

    2.  <u>North Carolina Constitutional Claims</u>

Plaintiff brings her Second Claim for Relief under the North Carolina Constitution, Article I, Sections 1 and 14. The North Carolina Constitution declares that "all persons are created equal," and that they are endowed "with certain inalienable rights," including "life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." N.C. Constitution, Art. I, § 1. In addition, "[f]reedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse." N.C. Constitution, Art. I, § 14.

"The standards for free speech retaliation claims under the state constitution are the same as those for free speech claims under the federal constitution." <u>Hunter v. Town of Mocksville</u>, No. 12CV333, 2013 WL 5726316, at *11 (M.D.N.C. Oct. 21, 2013) (citing <u>Evans v. Cowan</u>, 132 N.C. App. 1, 510 S.E.2d 170 (1999), and <u>Lenzer v. Flaherty</u>, 106 N.C. App. 496, 418 S.E.2d 276 (1992)). Defendants at this stage of the proceedings do not make arguments as to whether Plaintiff has alleged facts that, if proven, would show a violation of the state constitution. Rather, Defendants allege that Plaintiff may not bring a claim directly under the North Carolina Constitution because under state law, she has other adequate remedies for the alleged wrong. Plaintiff responds that because Defendants have moved to

dismiss all of her claims, it is unclear whether she has another adequate state law remedy and a decision on the matter would be premature.

The North Carolina Supreme Court has recognized that "[t]he provision of [the North Carolina Constitution] which protects the right to freedom of speech is self-executing." Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). "Therefore, in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under [the North Carolina Constitution]." Id. In Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 678 S.E.2d 351 (2009), the North Carolina Supreme Court reaffirmed its "long-standing emphasis on ensuring redress for every constitutional injury." Id. at 342, 357. In Craig, the court held that for an alternative state remedy to be considered "adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." Id. at 339-40, 355. Specifically, the court found that when sovereign or governmental immunity stood as an absolute bar to an alternative form of relief, the nominal availability of that alternative was not sufficient to preclude a plaintiff from bringing their claim directly under the state constitution.

Here, Plaintiff alleges wrongful discharge in violation of public policy as an alternative to her constitutional claim. Defendants have raised governmental immunity as a defense to that claim, and have otherwise moved for dismissal. At this early stage of the case, "it is not yet clear whether plaintiff's wrongful discharge claim will provide an adequate state remedy. . . .

22

Because the record is inadequate to decide this question as a matter of law, the motion [to dismiss] should be denied." Hunter, 2013 WL 5726316, at *11.

> 3. Wrongful Discharge in Violation of Public Policy

Plaintiff brings her Third Claim for Relief as an alternative to her state constitutional claim addressed above, for wrongful discharge in violation of public policy. Plaintiff contends that it is the public policy of the state of North Carolina, as expressed in Article I, § 14 of the North Carolina Constitution, that local government employees be protected from retaliation for exercising their right to free speech. She alleges that Defendants' termination of her employment violated that state policy. Defendants have moved to dismiss, arguing that "Plaintiff's speech was not protected speech under the First Amendment to the United States Constitution or Article I, Sections 1 and 14 of the North Carolina constitution, and therefore cannot be the basis of a public policy violation." (Defs. Br. at 15.).

In North Carolina, "[t]he public policy exception to the at-will employment doctrine is confined to the express statements contained within [state] General Statutes or [the North Carolina] Constitution." Kranz v. Hendrick Automotive Grp., Inc., 196 N.C. App. 160, 162, 674 S.E.2d 771, 773 (2009) (citation omitted). "North Carolina appellate courts have found public policy to include the State Constitution, in particular its guarantee of free speech in Article I, Section 14." Hunter, 2013 WL 5726316, at *10 (citing Lenzer, 106 N.C. App. at 515, 418 S.E.2d at 287). Defendants' contention here largely relies on their arguments, addressed above, that Plaintiff has failed to allege a violation of the First Amendment. Defendants concede that Plaintiff's Complaint "alleges circumstances . . . surrounding her termination and suggests that she was engaging in legally protected activity, and that her termination by

RCBOE was contrary to law." (Defs. Br. at 17.) Defendants nevertheless contend that Plaintiff failed to state a claim for wrongful termination because "Defendants did not violate Plaintiff's First Amendment free speech rights." (Defs. Br. at 17.) However, because the Court has recommended that Plaintiff's § 1983 First Amendment Claims be allowed to proceed, for the reasons set out at length above, Defendants' Motion to Dismiss should also be denied as to the wrongful termination claim. Any disputes regarding whether she can establish her First Amendment claim, in particular based on a weighing of the relevant factors, can be raised again after an opportunity for factual development and consideration on the whole record.

    4.  <u>Unjust Enrichment</u>

Plaintiff brings her Fourth Claim for Relief for Unjust Enrichment. Plaintiff contends that Defendants RCBOE and Rockingham County were unjustly enriched when she assumed the duties of the Director of RCBOE from around March 16, 2020 until her termination in September 2020, without an accompanying increase in salary or benefits as compared to her Senior Deputy Director position. Plaintiff alleges that she assumed the additional duties with a reasonable expectation of being paid for them, that Defendants knew or should have known that she had taken on additional duties with the expectation of payment, and that Defendants voluntarily accepted her services as de facto County Director.

Defendants contend that Plaintiff has failed to state a claim for unjust enrichment, based on the principle that "[o]ne who takes a public office is deemed to hold it cum onere." <u>Hill v. Stansbury</u>, 223 N.C. 193, 195, 25 S.E.2d 604, 606 (1943). Under North Carolina law,

> [a] prima facie claim for unjust enrichment has five elements. First, one party
> must confer a benefit upon the other party. Second, the benefit must not have

been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. Third, the benefit must not be gratuitous. Fourth, the benefit must be measurable. Last, the defendant must have consciously accepted the benefit.

JPMorgan Chase Bank, Nat'l Ass'n v. Browning, 230 N.C. App. 537, 541-42, 750 S.E.2d 555, 559 (2013) (internal citations and quotation marks removed). Here, Plaintiff alleges that she conferred a benefit on Defendants when she assumed the additional duties of the Director. Plaintiff alleges that the benefit was not gratuitous, in that she expected to be paid for her services, and that Defendants knew or had reason to know that she expected to be paid for the duties performed and voluntarily accepted her services. In response, Defendants seek dismissal with a cite to the decision of the North Carolina Supreme Court in Hill v. Stansbury. In that case, the North Carolina Supreme Court explained that:

> The general rule is that where the duties of an officer have been increased by the addition of other duties germane to his office, in the absence of legislation authorizing an increase in his salary, such additional duties are to be performed without extra compensation. United States v. King, 147 U.S. 676, 13 S.Ct. 439, 37 L.Ed. 328; Annotation L.R.A.1918E, 761. In other words, extra compensation is not ordinarily allowed to officers for extra work, without legislative sanction. Hoyt v. United States, 51 U.S. 109, 10 How. 109, 13 L.Ed. 348. See Board of Drainage Com'rs v. Davis, 182 N.C. 140, 108 S.E. 506, where legislative authority for increasing compensation was implied. It is to be noted, however, that the rule does not extend to services rendered in an independent employment, not incidental to the duties of the office, such as might have been performed by some other person. Converse v. United States, 62 U.S. 463, 21 How. 463, 16 L.Ed. 192; City of Detroit v. Redfield, 19 Mich. 376.

> The compensation for official services is fixed by law. In some cases it may be extravagant; in others wholly inadequate. 43 Am.Jur. 150. It is not a matter of assumpsit or quantum meruit. Reed v. Madison County, 213 N.C. 145, 195 S.E. 620; Osborne v. Canton, 219 N.C. 139, 13 S.E.2d 265. Then, too, the work may become onerous from changed conditions or increased duties, but nothing in addition to the statutory reward may be claimed by the officer, however disproportionate to the value of his services it may be or may become. In such case he must content himself with the salary and fees allowed by law, and look

25

to the bounty of the General Assembly for any additional remuneration. One who takes a public office is deemed to hold it cum onere. 37 Am.Jur. 879; 43 C.J. 691; McQuillin on Municipal Corporations, Vol. 2, Sec. 544; Dillon on Municipal Corporations, Vol. I, 731; <u>Borden v. Goldsboro</u>, supra.

"It is a well settled rule, that a person accepting a public office with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties are increased and not his salary. His undertaking is to perform the duties of his office whatever they may be from time to time during his continuance in office for the compensation stipulated,—whether these duties are diminished or increased. Whenever he considers the compensation inadequate, he is at liberty to resign". Potts, J., in <u>Evans v. City of Trenton</u>, 24 N.J.L. 764.

<u>Hill v. Stansbury</u>, 223 N.C. at 195, 25 S.E.2d at 605-06; <u>see also</u> 56 Am. Jur. 2d Municipal Corporations § 227 ("The rule seems well established that a de facto municipal or county officer cannot maintain an action to recover the salary, fees, or other emoluments attached to the office even though the de facto officer has performed the duties thereof.").

However, "there is authority holding that a de facto municipal or county officer who, pursuant to apparent authority and in good faith, has performed the duties pertaining to the office may, in the absence of a de jure claimant, enforce payment by the public of the compensation to which an incumbent of the office is entitled for services performed or duties fulfilled." 56 Am. Jur. 2d Municipal Corporations § 228. Plaintiff here alleges that from March 2020 to September 2020, she "served the role of County Director for the defendant RCBOE, assuming the duties and responsibilities of the County Director." (Compl. ¶ 40.) Defendants have not addressed Plaintiff's claim to the extent she alleges that she served as either the actual or de facto County Director with an expectation of payment for that role. Given the lack of any briefing of this issue by either side, the Court will not attempt to address the matter without

26

further input and analysis by the Parties, and the Court will recommend the Motion to Dismiss be denied at this time without prejudice to further consideration of this issue on subsequent dispositive motions.

      C.      <u>Motion to Dismiss as to Individual Defendants</u>

          1.      <u>Defendants Purgason and Reece, in their Individual Capacities</u>

Defendants Purgason and Reece contend that they are entitled to public official immunity from Plaintiff's state law claims. "Public official immunity, which applies to public officials sued in their individual capacity, is analogous to qualified immunity in the federal context." <u>White v. City of Greensboro</u>, 408 F. Supp. 3d 677, 705-06 (M.D.N.C. 2019). In considering this contention, the Court notes first that public official immunity would not apply to the federal § 1983 claim in Count One, and would instead be considered only as to the state law claims asserted against Defendants Purgason and Reece in their individual capacities.

With respect to Plaintiff's claim for violation of the North Carolina Constitution in Count Two, Plaintiff asserts that claim only "against the defendant RCBOE and the individual defendants in their official capacities." (Compl., text before ¶ 26.) Thus, Plaintiff has not asserted a claim against Defendants Purgason and Reece in their individual capacities on Count Two.

With respect to Count Three, it is not clear if Plaintiff intends to bring her claim for wrongful discharge against Defendants Purgason and Reece in their individual capacities, but they are not proper defendants to such a claim under state law. In North Carolina, "a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents." <u>Iglesias v. Wolford</u>, 539 F. Supp. 2d 831, 839-40 (E.D.N.C. 2008). As

noted by the Eastern District of North Carolina in <u>Iglesias</u>, dismissal of a wrongful discharge claim against individual defendants does not depend on the capacity in which the individual defendants were sued, because whether officially or personally, the fact that they were not plaintiff's employer was dispositive of the claim. <u>Id</u>. Similarly in <u>Sides v. Duke Univ.</u>, the North Carolina Court of Appeals held that a plaintiff's wrongful discharge claims against individual defendants who were involved in her termination were rightly dismissed because "her employment contract was with Duke University," rather than with either individual defendant. 74 N.C. App. 331, 343, 328 S.E.2d 818, 826-27 (1985) (overruled on other grounds by <u>Kurtzman v. Applied Analytical Indus., Inc.</u>, 347 N.C. 329, 493 S.E.2d 420 (1997)). Similarly here, Plaintiff alleges that she was employed directly by RCBOE, not by Purgason or Reece. As such, Plaintiff's claim for wrongful discharge as to Defendants Purgason and Reece should be dismissed, and it is not necessary to separately consider public official immunity on this claim.

Finally, with respect to Plaintiff's claim for unjust enrichment in Count Four, Plaintiff alleges that she rendered services to the County and the RCBOE, but does not allege any unjust enrichment to the individual Defendants. Therefore, it does not appear that she has asserted Count Four against Defendants Purgason and Reece individually.

Thus, Counts Two and Four were not asserted against Defendants Purgason and Reece individually. It is not clear if Count Three was asserted against Defendants Purgason and Reece individually, but they are not proper defendants on that claim under state law. The only potential claim against Defendants Purgason and Reece in their individual capacities is the

§ 1983 claim in Count One, and state law public official immunity would not apply to that claim. Therefore, there is no basis to further consider state law public official immunity.

2. <u>Defendants Purgason and Reece, in their Official Capacities</u>

Defendants Purgason and Reece next argue that all claims against them in their official capacities as members of RCBOE should be dismissed as duplicative of the claims against RCBOE. Plaintiff responds that dismissal of the official-capacity claims against Purgason and Reece would be premature, because it is not yet clear whether RCBOE will in fact be liable. However, the Court need not wait until liability is ultimately determined to dismiss the official-capacity claims against Defendants Purgason and Reece. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Brattain v. Stanly Cnty. Bd. of Educ.</u>, No. 1:19CV1037, 2020 WL 6364718, at *4 (M.D.N.C. Oct. 29, 2020) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)). Here, RCBOE has received notice of the suit and is defending it, and Plaintiff has provided no indication of relief she could receive from Purgason and Reece in their official capacities that she could not receive from RCBOE as an entity. Therefore, the claims against Purgason and Reece in their official capacities are duplicative, and should be dismissed.

D. <u>Additional Assertions in the Motion to Dismiss</u>

Defendants also argue that they are entitled to governmental immunity as to both Plaintiff's Third and Fourth Claims to Relief, and that Plaintiff has not adequately pled waiver of immunity. Under North Carolina law, "[i]n order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity."

29

<u>Paquette v. County of Durham</u>, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002).  Here,

Plaintiff alleges that Defendants have waived immunity through the purchase of liability

insurance or participation in a local government risk pool.   (Compl. ¶ 17.)   Defendants

acknowledge this pleading, but cite to <u>Patrick v. Wake Cnty. Dep't of Human Servs.</u>, 188 N.C.

App. 592, 595-96, 655 S.E.2d 920, 923 (2008), for the proposition that Plaintiff must not only

plead waiver of immunity broadly, but must plead that the specific insurance policy held by

Defendants covers the alleged tortious acts.   However, in <u>Patrick</u>, waiver was addressed at the

summary judgment stage and the court interpreted specific provisions of the insurance policies

at issue.  Furthermore, in <u>Estate of Earley ex rel. Early v. Haywood Cnty. Dep't of Soc. Servs.</u>,

204 N.C. App. 338, 694 S.E.2d 405 (2010), the North Carolina Court of Appeals found in the

Defendant government's favor only after "Defendant presented evidence showing that the

doctrine of governmental immunity provided a complete defense."  <u>Id.</u> at 339, 406-07.  Based

on that precedent, the Court finds that Plaintiff has met her initial burden to plead waiver of

governmental immunity, and any further resolution of these issues would be on dispositive

motions following discovery.  <u>See, e.g.</u>, <u>Hunter v. Town of Mocksville</u>, 897 F.3d 538, 547-53

(4th Cir. 2018).

Defendants also seek dismissal of Plaintiff's demand for punitive damages, and

Defendants summarily contend that Plaintiff has "failed to allege that her damages were a

result of one or more negligent, grossly negligent, careless, reckless, willful, wanton acts and/or

omissions and commissions on the part of the Defendant."  (Defs. Br. at 24.)   In response,

Plaintiff notes that she "does not seek to recover punitive damages from the RCBOE or the

County."  (Pl. Br. at 19.)  Thus, it appears that Plaintiff seeks punitive damages only as to the

30

§ 1983 claims against Defendants Purgason and Reece in their individual capacities. (Pl. Br. at 19, citing <u>Smith v. Wade</u>, 461 U.S. 30, 51 (1983)). In the Complaint, Plaintiff alleges intentional wrongful conduct in violation of the First Amendment, and alleges that Defendants' conduct was "willful and wanton, and evinced an intentional or reckless indifference to and disregard for the legal rights of the Plaintiff." (Compl. ¶ 48.) Defendants have not shown or explained how this is insufficient to support a claim for punitive damages, and at this stage of the case the Court will recommend that the Motion to Dismiss as to punitive damages be denied, subject to further consideration on fuller briefing after discovery.

IV.    CONCLUSION

Based on the analysis set above, the Motion to Dismiss should be granted in part and denied in part. The Motion to Dismiss should be granted as to the claims against Rockingham County, since the RCBOE is the proper defendant; granted as to the claims against Defendants Purgason and Reece individually in Count Three for wrongful discharge since RCBOE is the employer; and granted as to the claims against Defendants Purgason and Reece in their official capacities since those claims are duplicative of the claims against RCBOE. The following claims would proceed to discovery: Count One asserting a claim under 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights against Defendant RCBOE and Defendants Purgason and Reece in their individual capacities; Count Two asserting a claim for violation of the North Carolina Constitution, Article I, §§ 1 and 14, against RCBOE; Count Three

31

asserting a claim for wrongful discharge in violation of public policy against RCBOE; and Count Four asserting a claim for unjust enrichment against RCBOE.

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss [Doc. #16] be GRANTED IN PART as to the claims against Rockingham County, the claims against Defendants Purgason and Reece individually in Count Three, and the claims against Defendants Purgason and Reece in their official capacities, and that the Motion to Dismiss otherwise be denied.

This, the 6th day of August, 2021.

_/s/ Joi Elizabeth Peake_
United States Magistrate Judge
